# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
SALUSSOLIA, EWING,[1] and WALKER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant CLOVIS H. CASTRO**
**United States Army, Appellant**

ARMY 20190408

Headquarters, United States Army Combined Arms Support Command
Daniel G. Brookhart, Military Judge
Colonel Jeffrey A. Miller, Staff Judge Advocate

For Appellant: Colonel Elizabeth G. Marotta, JA; Lieutenant Colonel Tiffany D. Pond, JA; Major Angela D. Swilley, JA; Captain Paul T. Shirk, JA; Philip D. Cave, Esquire (on brief); Captain Paul T. Shirk, JA; Philip D. Cave, Esquire (on reply brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Jonathan S. Reiner, JA; Lieutenant Colonel Teresa T. Phelps, JA (on brief).

25 August 2020

-----------------------------------
MEMORANDUM OPINION
-----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

EWING, Judge:

Appellant used a Government Services Administration ("GSA") gasoline card on numerous occasions to put gas in his personal vehicle, while not on official military travel. Appellant's use of the GSA gas card in this way was unauthorized

---

[1] Judge Ewing decided this case while on active duty.

and resulted in the larceny of gasoline. Among other charges, appellant pleaded guilty to stealing gas from the GSA.[2]

In this court, appellant contends that the military judge abused his discretion by accepting appellant's guilty plea to stealing gas from the GSA. Appellant does not fault the military judge's *Care*[3] inquiry as such, but rather contends that the government charged the case incorrectly. More specifically, appellant claims that he could not have stolen gas from the GSA, because the GSA never possessed the gas. We reject appellant's claim, and affirm.

## BACKGROUND

Appellant was a noncommissioned officer who worked in his unit's supply section. As part of his official duties, appellant had access to both government-owned vehicles ("GOVs") and the GSA gas cards associated with those vehicles. As appellant explained during his *Care* inquiry, each GOV had an assigned GSA gas card, which was used "solely for the purpose of" purchasing fuel while soldiers were using that GOV for official travel. One of appellant's duties was providing GOVs and GSA gas cards to soldiers for use on official travel. Appellant had also, himself, legitimately used the unit's assigned GOVs and GSA gas cards for official Army travel. The GSA gas cards were not assigned to any individual soldier, but rather were issued to soldiers along with the GOV.

Appellant admitted that, after falling on hard financial times, he had taken various GSA gas cards belonging to his unit and used those cards to purchase gasoline for his personal vehicle, while on unofficial travel. Specifically, appellant, who was stationed at Fort Lee, Virginia, and whose wife was living in Columbia, South Carolina, admitted to using a GSA gas card to put gas in his personal car on approximately twenty-five occasions while driving back and forth between the two places pursuant to leaves or passes, as well as while on other personal travel. Appellant always used the GSA card at the gas pump, and agreed that, upon the completion of the electronic transaction, the GSA owned the gasoline that he put in

---

[2] A military judge sitting as a special court-martial, convicted appellant, pursuant to his pleas, of one specification of violation of a general regulation and one specification of larceny, in violation of Articles 92 and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892 and 921 (2018). The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for thirty days, and reduction to the grade of E-4. This case is before us for review under Article 66, UCMJ. We have also given full and fair consideration of the matters personally submitted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them to be without merit.

[3] *United States v. Care*, 18 C.M.A. 535 (1969).

his personal vehicle. Appellant explained that when soldiers used the GSA gas cards to purchase fuel, the payment to the merchant came "directly from the GSA." Appellant knew that his use of the GSA gas card in this way was unauthorized.

## LAW AND DISCUSSION

We review a military judge's acceptance of a guilty plea for an abuse of discretion, and questions of law arising from the guilty plea de novo. *United States v. Murphy*, 74 M.J. 302, 305 (C.A.A.F. 2015) (citing *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)). We will not disturb a guilty plea unless an appellant demonstrates a substantial basis in law or fact for questioning the plea. *Inabinette*, 66 M.J. at 305.

Because of the way that appellant committed this larceny—that is, his unauthorized use of a GSA gas card—we find that the government's charging theory was permissible, and that the military judge therefore did not abuse his discretion by accepting appellant's plea.

In the context of larcenies by electronic transaction, the questions of who stole what, and from whom, can become surprisingly, arguably *unduly*, complex in the military justice system. As our superior court has explained, "in the usual case of a credit card or debit card larceny, the 'person' who should be alleged in the specification is a person from whom something was *obtained*, whether it is goods or money." *United States v. Williams*, 75 M.J. 129, 132 (C.A.A.F. 2016) (quoting *United States v. Lubasky*, 68 M.J. 260, 263 (C.A.A.F. 2010)) (emphasis in *Williams*). This makes sense in the "usual" credit card larceny case. When Private Smith steals Private Jones's credit card (or card number) and uses that card to buy a pizza from Pizza Hut, Private Smith has obtained the pizza through false pretenses (that is, "I am Jones and this is my credit card," or, at least, "I am authorized to use this card"). Thus, Private Smith stole a pizza from Pizza Hut. This is true even if Private Jones's credit card company ultimately pays Pizza Hut for the pizza, because the crime of obtaining the pizza through false pretenses was complete at the time that Smith presented Jones's card and obtained the pizza. *See, e.g.*, Edward J. O'Brien and Timothy Grammel, *Achieving Simplicity in Charging Larcenies by Credit, Debit, and Electronic Transactions by Recognizing the President's Limitation in the Manual for Courts-Martial*, Army Law., June 2015, at 10 ("If the accused obtains goods from a merchant by a false representation that causes the merchant to part with the property, then there is a larceny of those goods from that merchant, even if the merchant gets reimbursed for the cost of the goods.").

However, as suggested by the Court of Appeals for the Armed Forces' (CAAF) use of the term "usual case," other fact scenarios present the government with alternative charging options. *Williams*, 75 M.J. at 132 ("Alternative charging theories are also available, as long as the accused wrongfully obtained goods or

money from someone with a superior possessory interest.") (internal quotation marks and citation omitted). This is because certain electronic transaction larcenies do not fit the above pizza theft example.

The facts of this case fall outside the "usual" credit card fraud case, and thus authorize alternative charging theories, including the one the government selected here. Read together, the CAAF's decisions in *Williams* and *United States v. Cimball Sharpton*, 73 M.J. 299 (C.A.A.F. 2014), largely dictate this outcome. In *Cimball Sharpton*, the Air Force had issued the accused a General Purchase Card ("GPC"), so that she could buy medical supplies for an Air Force hospital as part of her official duties. 73 M.J. at 299–300. Instead, she used the GPC to buy approximately $20,000 worth of personal items from AAFES, Walmart, Walgreens, and other stores. *Id.* at 300. The government charged the larceny as theft of money from the Air Force. *Id.* In the context of a legal sufficiency review, the CAAF ratified this charging decision, and noted that the Air Force (1) had agreed to pay directly for all GPC purchases, regardless of any underlying fraud; and (2) was the only entity that suffered any financial harm as the result of the defendant's unauthorized use of the GPC. *Id.* at 301–02.

In *Williams*, the CAAF clarified that while it should not have focused on the fact that the Air Force was the only entity that suffered financial loss in *Cimball Sharpton*, 75 M.J. at 133 ("[i]t is irrelevant, for the purposes of larceny, that a merchant is later paid for goods that are wrongfully obtained or a bank repaid for moneys expended to those merchants"), the Air Force was nonetheless the appropriate victim of Cimball Sharpton's larceny, because it was "an entity from whom the appellant wrongfully obtained goods or money." *Williams*, 75 M.J. at 133–34. That is to say, when Cimball Sharpton exceeded the limits of her authority to use the GPC in an authorized way, she stole from the Air Force itself. *Id.* at 133.

*Williams*'s explanation of *Cimball Sharpton* is also instructive on the question of the correct *object* of the larceny, that is, "goods" or "money." While Cimball Sharpton was charged with stealing money from the Air Force, the CAAF noted in *Williams* that:

> [I]t seems the better charging theory would have been that [Cimball Sharpton] stole the particular items b*y exceeding her actual authority and keeping the items that were in effect purchased by the Air Force for herself.*

*Williams*, 75 M.J. at 134 n.6 (emphasis supplied).

Appellant's case is analogous to *Cimball Sharpton*, as clarified by *Williams*. Like the appellant in *Cimball Sharpton*, appellant was authorized to use GSA gas cards as part of his official duties, and knowingly exceeded that authorization to

commit larceny. Thus, the GSA was the correct victim in this case, as the Air Force was in *Cimball Sharpton*.

Likewise, appellant's arguments to the contrary notwithstanding, the government's decision to charge him with stealing gas from the GSA (as opposed to money) was also permissible. Indeed, as the CAAF explained, this was the "better charging theory" under these circumstances. *Williams*, 75 M.J. at 134 n.6. Appellant never came into possession of any money—only gas—and, unlike a credit or debit card scenario, appellant explained that there was no mechanism by which he could have used the GSA card to obtain money. Government Services Administration cards are not credit cards, and, as appellant explained in his *Care* inquiry, are only authorized for use to buy gas and other incidentals for government vehicles. In short, the GSA bought gas, and appellant then stole that gas. *See also United States v. Johnson*, ARMY 20160245, 2018 CCA LEXIS 189 (Army Ct. Crim. App. 17 Apr. 2018) (mem. op.) (finding that because the appellant was an authorized user of the Government Purchase Card he used to commit larceny, the Army was vested with "legal title" to the purchased items "at the point of sale").

His argument regarding the government's charging decision aside, appellant concedes that the military judge's *Care* inquiry covered all of the elements of larceny, and was otherwise sufficient. We agree, and because we find no "substantial basis in law or fact" to question appellant's plea, *Inabinette*, 66 M.J. at 305, we affirm.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Judges SALUSSOLIA and WALKER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court